Case number 245119, Black Farmers Agriculturalists Association Inc et al. versus Thomas Vilsack et al. Argument not to exceed 15 minutes per side. Mr. Percy Squire, you may proceed for the appellants. Good morning, Your Honor. May it please the Court. I'd like to reserve five minutes for rebuttal, if I may. Your Honor, I am here today to appeal a decision made by the United States District Court for the Western District of Tennessee concerning the eligibility of the estates of black farmers who have experienced discrimination prior to January 1st, 2021 at the hands of the United States Department of Agriculture. The specific context in which this case comes to the Court is pursuant to the Inflation Reduction Act of 2022. The Congress of the United States enacted a statute, Section 2207, which was designed to provide financial assistance to landowners, farmers, and ranchers who have experienced discrimination prior to January 1st, 2021. The Inflation Reduction Act, Section 2207, was actually an amendment of the American Rescue Plan, Section 1006, which Congress passed also to address discrimination prior to January 1st, 2021, but it had a racial component incorporated into it, which caused certain challenges to be filed against it by individuals who felt they didn't come within the ambit of what the statute authorized. Congress therefore broadened the scope of who was eligible for relief under Section 2207 by excluding any reference to race, gender, or anything of that nature. I'm a little unclear about who the association members are and also the individuals, but are the perspective claimants here farmers? Are they still farming or are they looking for retroactive relief? Your Honor, the claimants here are individuals who, number one, farmed, and number two, wanted to present applications for relief under the Inflation Reduction Act on behalf of the estates of relatives who were no longer with us but who had experienced discrimination prior to January 1st, 2021. Was there a, would it be the estate, is that the estate of someone who farmed that same farm? Yes, Your Honor. Okay. Yes. And there's no claim that they themselves suffered discrimination because they were farming on that same property? Your Honor, it's a combination. The primary focus is claimants who wanted to file on behalf of the estates of a decedent who farmed land that the claimant may still own, may not personally farm, or they may personally farm it. But the argument or the objection was to not permit an application under the USDA's Discrimination Financial Assistance Program to even be filed. That's what the gravamen of the complaint is, is that they would, USDA would not even consider or take in those applications on behalf of the decedents, which was a departure from the process that USDA had followed in the past. They're only seeking relief for deceased farmers. In other words, if they're living, they can apply for assistance themselves under the statute. That's correct, Your Honor. So what we're talking about here are just claims. They're obviously, they're living individuals following them, but they're entirely tied to deceased farmers and assistance to those deceased farmers. That's what we're focused on, Your Honor. What we refer to in our papers as legacy claims, and that's to say heretofore, under various programs to provide relief to address discrimination, racial discrimination, by the United States Department of Agriculture, the department accepted claims on behalf of estates. Now, for no articulable reason, the department wouldn't even accept these applications. Are you talking about the litigation that was settled? Your Honor, I am referring to, there were a series of programs that were enacted by USDA to address past discrimination, either against individuals on the basis of race, on the basis of gender, ethnicity. There was a Hispanic program. There was a female program. There was a program for Native Americans. The initial program, referred to generally as the Pigford claims, were on behalf of black farmers. But subsequent to Pigford, which came out in the late 90s, there were also claims made by other groups of individuals. That was all litigation. I'm sorry, Your Honor. That was litigation. Well, Pigford was litigation. Some of the subsequent ones never even went to litigation, Judge. Did those programs use the same language, like assistance? Yes, Your Honor. It is, as a matter of fact. That's one of the basis for our arguments here, is that the district court took the position that the language used in connection with the Inflation Reduction Act, assistance, refers to assistance for individuals who are presently farming. But it's our position that the standard of review employed by the district court did not take into account, or the court did not employ, its duty under Article III in terms of construing a statute, the history of the statute, because 2207 was ... I'm sorry, Your  Can you explain how, based on the language of the statute, how you can provide assistance to someone that's deceased? Your Honor, if you look at Section 1006 of the American Rescue Plan, which 2207 superseded, the term assistance is defined. The term assistance, with respect to 1006, said assistance means provide outreach, remediation, financial training, and a whole litany of things, grants and loans to address racial equity and financial assistance. It goes on and provides eight different categories of what's meant by assistance. It's our position that that definition of assistance is also applicable to 2207, and it says to address racial equity. So it doesn't limit who is entitled to relief to someone who is actively farming. The reason we are saying that is because the purpose of these statutes is to address past discrimination, and individuals who may have passed away experience far more discrimination at the hands of USDA ... How does this assist them? Say again, Your Honor? How does giving them money assist them? I mean, unfortunately, they're deceased. So how does giving them money today assist those deceased individuals? What it does, Your Honor, is it puts their heirs in a position to benefit from the efforts of ... Assists the heirs. It assists the heirs. It's assisting the estates. The claim is on behalf of the estate. The statute requires assistance to, I would think, a person who can actually receive assistance. Your Honor, the statute is not that limited. That's why I refer to the definition of assistance under the American Rescue Plan. The point is, the estate is who would have been in a position to bequeath finances to their heirs, but for the limitation here opposed by USDA. To the extent that this statute is construed not to embrace those types of claims, it's a violation of 42 U.S.C. 1982, because ... The statute assists farmers, it doesn't assist estates, it assists farmers. Your Honor, the statute ... Living farmers or deceased farmers, but it's got to assist a farmer. Your Honor, the statute assists persons who were discriminated against prior to January 1, 2021. In connection with the point that you raised, for instance, if you look at the application itself, the application itself says it provides assistance to people who intended to become farmers. It accepts applications for individuals who aren't even farming. If they intended to become farmers ... There are still people, there are still individuals ... They're in a state, Your Honor ... That just ... I'm sorry, I don't mean to interfere. All that I'm saying, Your Honor, how can you discriminate between individuals who have passed away who actually farmed and provide assistance to people who never farmed, who merely intended to farm? That's what this statute does, according to the way it was implemented by USDA. Can I ask you one sort of procedural question? Yes, sir. In the district court, you raised an issue about the deadline, about the application being complex, and the district court said you didn't have standing. I didn't really read your opening brief as addressing those issues. The government says in their response brief you didn't raise those issues, and you didn't file a reply brief. So I view those issues as not on the table for us today. Your Honor, I raised those issues in connection with my application for an injunction. I filed a renewed application for a preliminary injunction ... Fair enough, but in your merits brief, you didn't raise them. No, I raised it in connection with my application for ... Okay, so that question is then you didn't raise them in your merits brief. Oh, no, Your Honor. I addressed it, but I think it's before the court because it was raised in my application for an injunction, which was only filed in October of 2024. What we said in that application was that ... I'm familiar with it. Yeah. I know. We've read that. I just wanted to ... My question was more about where and when, but I don't know, do other colleagues have any questions? Okay, well, we'll give it to you at rebuttal time. Thank you very much, Judge. Good morning, Your Honors, and may it please the court. Jack Starcher on behalf of the United States. The district court here correctly granted the government's motion to dismiss. As to the primary question or issue presented in the briefing before this court, this question of whether decedent's estates are separately eligible to file applications under this program, the district court correctly held, not as a matter of deference to USDA, but as a matter of plain meaning of statutory text, that the text of section 2207E indicates that the applications under this program can only be filed by living farmers, the actual people who experience discrimination, and that the purpose of this program was to ... What about potential producers? I mean, there's no assistance there. I'm sorry, potential ... Potential producers. In ... This was people who intended to become farmers? Well, it's a category of people who can make claims. The ... People who intended to farm. Right, that's correct. So it's individuals who intended to farm, but were prevented from doing so because of discrimination. The key there is those people did still experience the discrimination themselves and were able to file an application themselves seeking funds. How is that assistance? There's no requirement that they farm. Well, the person is still living and that money is going to the person who is still alive and who experienced discrimination and provides assistance for them going forward. But that's a different rationale. So to be clear, the text of the statute doesn't say program to provide additional assistance to farmers in farming. It's assistance to farmers, ranchers, or forest landowners. And I take your point that a person who never became a farmer because they experienced discrimination doesn't fit within that text. But I guess just to return to this case ... So it's not limited to assistance in farming? I see nothing in the text of the statute, and this wasn't brief, that would require the assistance to be assistance in farming. The assistance does have to go to the person who experienced discrimination, though. And I think that's the key here, and I think that is the clearest way in which plaintiffs claims fail under any understanding of what plaintiffs are asking for. They are asking for the ability to file applications on behalf of someone who experienced discrimination. Well, let's take the example of someone who is farming, and they're farming on their parents' farm, even their grandparents'. And there's been generations on the farm. So the assistance would be to an actual farmer. It seems like ... Are those people able to say, well, my father suffered discrimination, here's all the paperwork, but they were not the claimant? Well, I think they would have to be ... Are they co-borrowers? Sorry? Are they recognized as co-borrowers under the regulations? Or is it, look, you didn't apply. You were eight years old then. So I know that under the program, if someone, if a loan was passed down, and the loan itself was infected by discrimination ... Right, but in my example, they didn't get a loan. They were one of the people who were denied. So unless ... And again, this goes back to the text of the statute. Unless that person is able to file an application under ... There was a certification requirement. There was a lot of factual detail required. If they were able to file an application and explain how they themselves experienced discrimination, then they could do that. And again, that's consistent, I think, with what the statute required, which is, again, to provide assistance to the person who experienced discrimination themselves. And I think useful here in talking about heirs, in particular, is to highlight that other subsections of 22007 do expressly talk about heirs to property and programs intended to help both the original owner of the property and heirs, and specifically make that distinction. So Congress, I think, clearly understood ... Where is that section? It's cited in our brief. I think it's subsection C, maybe, of 22007. I'm sorry. I don't have the full ... I just have subsection E in front of me. But it is mentioned in our briefing. So that indicates that Congress was aware of this reality that heirs exist and estates exist and the property moves. Well, I know what section you're talking about, but ... Yeah. Okay. So I think that's responsive. But I think none of these points ... If you were to think that some applications ... I take part of the upshot of these questions to be maybe USDA shouldn't have or should have considered doing something different with individuals who never became farmers. I still don't think that is of much assistance to plaintiffs. Because, again, under plaintiff's theory ... How do you respond to the argument that ARPA provided a definition of assistance that would encompass essentially what the plaintiffs are asking for, that it would go to the estates? Sure. So that definition from the American Rescue Plan Act lists a number of things that are also all forward-looking. Training, assistance with loan applications. So I don't think that all the examples given in that definition I think only reinforce what the district court concluded, which is that that term assistance naturally is a The idea that the fact that that definition did reference furthering of racial equity in general, that piece of the definition really has no bearing on the current state of the program. As opposing counsel noted, the major change made from the American Rescue Plan Act to the Inflation Reduction Act was the removal of any sort of racial or other classification. And now it's, I think, very clearly a program about remedying discrimination of all kinds and providing assistance to people who experienced that discrimination, again, I think is key. I'm sorry. So the prior versions did allow claims by heirs? No. No. And so that's why I'm not sure ... The prior definition included a list of things, all of which were forward-looking. That definition did not say anything that I'm aware of. But in practice, were you accepting claims under these prior statutes? No. No. So just to be clear, the American Rescue Plan Act wasn't joined before any money went out the door. So there were never claims processed or even, I think, filed under the American Rescue Plan Act system. The reference opposing counsel made to prior programs, those are not statutory programs. As noted, that was the Pigford Settlements and then all of the follow-on settlements. Those were settlements of legal claims against the United States. And so those were just different. And I guess I should note here that to the extent any estate of any person experienced discrimination in a way that violated any law, the estates can bring those claims. And the statute at issue here does not end or take away claims that anyone might have against the United States or anyone else. So it's not like there's any loss of rights here. It's just a benefit that was given by Congress. And Congress made choices about how best to distribute a limited pot of funds that it  And the way it chose to do that just left estates outside of the construction of the program. In that litigation, hundreds of millions of dollars were paid out. Maybe billions if you add up all the different groups of farmers. Yes. Pretty significant settlements and payments. It was a huge amount of money and it lasted, yeah, ongoing for many years. But again, it was all in service of settling out legal claims. And those were settlement payments in that, you know, to get the money, you had to give up your claim. There's no sort of giving up of any rights. Another reason we know it's assistance, not compensation, is there was no need to give up any claim. I appreciate because it was a little unclear from your friend on the other side. But when we're referring to statutes, the only statutory backdrop is really the 2021 statute. Yes. And that was COVID relief, essentially, wasn't it? I mean, this was giving money to people who are being affected by the pandemic. That's right. Again, I think it's people who are alive at the time and they need economic assistance because they lost their jobs. They have other financial hardships. That program was enjoined. They modified the program slightly. But again, I'm not a purposivist, but it seems like this was generated from a program that was operating to assist living farmers and other people who were experiencing challenges during the pandemic and needed other kinds of assistance. That's right. This was an American Rescue Plan Act program that was very, this bucket of the same bucket of money has continued forward into this program and it was intended, as you say, to get money out the door to people who needed it to prevent, you know, harm from befalling people during the pandemic in particular. It was one of many programs that was designed to do that. And I'm happy to answer if there are any other questions. But otherwise, we ask that you affirm the district court's holding. Okay. Thanks a lot. Thank you very much. Thank you. Civil Division. Your Honor, I would like to make a couple of points in response to the comments of opposing counsel. Number one, this program under 2207 would not accept an application on behalf of an estate. However, they made no decision concerning how to treat applications filed by individuals who were alive and then subsequent to filing the application may have died. They still process those applications and there's no basis to discriminate between someone who died subsequent to filing their application and someone who died who they wouldn't even accept the application. The other point we want to raise is that our claim and complaint is against the mere refusal to even accept the application. It would have been possible for USDA to accept these legacy applications and then decide subsequent to accepting for one reason or another because they don't claim it was assistance or something like that to then disqualify them. Here they wouldn't even accept them. And the process itself wasn't firm. So not only do we have a claim under the Administrative Procedures Act, but we have a claim under the Due Process Clause because the process itself wasn't firm. There was no basis to say a person who had already expired can't submit an application but to accept an application on behalf of a person whose extent and then later expired to continue to process that application. And that's what they're doing here. The other point is there was no right to an appeal, there was no right to an extension, and the time permitted for legacy applicants to even put themselves into a position to formulate an application was insufficient. Those are some of the arguments that I don't think are in your brief. Those are the arguments that are in your motion for an injunction on appeal. Your Honor. The deadline and application stuff didn't feel to me like you really raised in your opening brief. Your Honor, that's in my brief. One of the main things, when we listen to factors. As a standing argument, the district court bounced those on standing grounds. Your Honor. The legal, the standing point on. Our argument was that it was a violation of the Administrative Procedures Act because the rule was arbitrary and capricious. On that grounds, we raised these arguments. That that was part of the arbitrary and capriciousness of what USDA did. That's in our brief. Thank you very much. All right. Thank you. Great. I appreciate the arguments. The case will be submitted.